UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE TORRES

15 CV 03859

---------------------------------- x
CABLEVISION SYSTEMS CORP. and
CSC HOLDINGS, LLC,

                Plaintiffs,

    -against-

VERIZON COMMUNICATIONS, INC.
and VERIZON NEW YORK, INC.,

                Defendant.
---------------------------------- x

Civil Action No. _____

COMPLAINT

RECEIVED
MAY 19 2015
U.S.D.C. S.D.N.Y.
CASHIERS

        Plaintiffs Cablevision Systems Corp. and CSC Holdings, LLC (together, "Cablevision") bring this claim for declaratory judgment against Verizon Communications, Inc. and Verizon New York, Inc. (together, "Verizon") and allege as follows:

### PRELIMINARY STATEMENT

        1.     This is an action for declaratory judgment that a TV commercial being aired by Cablevision, which correctly states that Verizon's purported "100% fiber optics" service in fact uses regular cable in the home, is not false and does not violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

        2.     Cablevision and Verizon provide competing digital television, voice, and high-speed internet services. For years, Verizon has disseminated advertisements that falsely describe its "FiOS" brand service as utilizing solely fiber optic cable. For example, just within the past month, Verizon has run television advertisements in this District that touts Verizon's FiOS service as "100% fiber optics."

3.  Verizon's advertising of its supposedly "100% fiber optics" service is false. In reality, Verizon's service utilizes fiber optic cables outside of the home, but uses regular co-axial cable in many places, including to deliver service inside customer's homes and to connect to end user devices, such as cable modems and television set-top boxes.

4.  To correct the public misconception created by Verizon's false advertising, Cablevision introduced a TV commercial that correctly states that Verizon's FiOS service in fact "uses regular cable in the home." Verizon has demanded that Cablevision terminate that advertising, and Verizon Communications, Inc. instituted a proceeding in this District before the National Advertising Division of the Council of Better Business Bureaus ("NAD"), challenging the truthfulness of that advertising. The NAD is a voluntary forum that provides no opportunity for discovery or cross-examination of witnesses.

5.  Cablevision is prepared to defend the truthfulness of its advertising, but has declined to participate in the voluntary challenge proceeding instituted by Verizon Communications, Inc. Cablevision therefore invokes the jurisdiction of this Court and seeks a declaration that its advertisement is truthful and does not violate the Lanham Act.

## PARTIES

6.  Cablevision Systems Corp. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Bethpage, New York. Cablevision Systems Corp. is in the business of, among other things, providing cable service through its wholly owned subsidiary CSC Holdings, LLC.

7.  CSC Holdings, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Bethpage, New York.

8. Upon information and belief, Verizon Communications, Inc. is a Delaware corporation with its principal place of business at 140 West Street in New York, New York. Upon information and belief, Verizon Communications, Inc. either directly or through its subsidiaries and divisions, markets and provides telephone, internet and television services. Upon information and belief, Verizon Communications, Inc. markets its services throughout much of the United States, including within this district and areas of New York where Cablevision competes.

9. Upon information and belief, Verizon New York, Inc. is a New York corporation with its principal place of business at 140 West Street in New York, New York. Upon information and belief, Verizon New York, Inc. is a wholly owned subsidiary of Verizon Communications, Inc. that provides local landline services in the New York area, including Verizon FiOS internet service.

10. Cablevision and Verizon are direct competitors in the provision of telephone, internet and television services, including within this District. Cablevision and Verizon vigorously compete for subscribers within the coverage area served by both companies.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 2201. As set forth in greater detail below, an actual controversy exists between Cablevision and Verizon regarding the truthfulness of Cablevision's advertising under federal law. Verizon has demanded Cablevision terminate the advertising and has filed a challenge to this advertising in a non-judicial forum, alleging that Cablevision's advertising is false. Contrary to Verizon's contentions, Cablevision's advertising is true.

12. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c), in that Verizon resides in this District and is subject to personal jurisdiction in this District. In addition, a substantial part of the events giving rise to the claims asserted herein occurred in this District, in that the subject TV advertisement has been disseminated in this District and Verizon Communications, Inc. filed a challenge to the advertisement in this District before the NAD.

## FACTS

13. Cablevision is a leading telecommunications and media company that offers advanced digital television, voice, high-speed internet and WiFi services, among other entertainment and information products and services. Cablevision provides high-speed internet services to approximately 2.8 million households and businesses in the New York metropolitan area, including parts of Connecticut and New Jersey, under the brand name "Optimum Online." Cablevision's network for delivering its Optimum Online service provides a host of significant benefits, including advanced intelligence, low latency, and robust wireless capability.

14. Verizon is among Cablevision's primary competitors. Verizon provides traditional telephone and DSL internet service, and since 2005 has provided internet, cellular telephone, and video service through its branded "FiOS" service.

15. For years, Verizon has endeavored in its advertising to create the public misconception that its FiOS service utilizes <u>solely</u> fiber optic cable, and to falsely tout the supposedly "100% fiber optics" nature of its service as a characteristic that distinguishes FiOS from Cablevision's Optimum Online.

16. For example, within the past month, Verizon has run a television ad campaign for its FiOS service in which actors sarcastically say "thanks, Cable … for never upgrading to 100% fiber optics." Verizon has also disseminated print ads stating FiOS provides

"100% fiber-optic Internet." And in the past two weeks, Verizon has launched a radio ad campaign in which the voice-over states: "FiOS is powered by 100% fiber optics."

17. In reality, Verizon's FiOS service does not use "100% fiber optics." Verizon's service does utilize fiber optic cables outside the home. But in all or nearly all cases, to deliver services inside the customer's home, Verizon does <u>not</u> use fiber optic cable. Instead, Verizon uses regular cable – the same type of co-axial cable used to deliver cable television and high-speed internet – to deliver its FiOS service inside the home, and to connect to the end user devices inside the home, such as cable modems and television set-top boxes. In other words, it is through regular cable that FiOS customers connect to the internet or receive television channels.

18. In fact, this is not dissimilar to Cablevision's Optimum Online service. Like Verizon, Cablevision utilizes fiber optic cables outside of the home, and, like Verizon, uses regular co-axial cable to deliver services inside the home and to connect to end user devices. The principal difference between the two setups is that Optimum Online also uses co-axial cables for short distances between the home and a neighborhood "node." In fact, in certain situations, Verizon has used regular co-axial cable <u>outside the home</u> as well. Specifically, in certain apartment building installations, Verizon brings fiber only to the basement (or floor), and then uses regular co-axial cable from there to get to the actual apartment unit – and of course regular co-axial cable inside the apartment unit, too. These distances from the basement to the apartment unit can sometimes be greater than the distances between a Cablevision node and (say) a single-family home in a dense neighborhood.

19. To correct the public misconception created by Verizon's false advertising, including Verizon's very recent "100% fiber optics" television, radio, and print ads,

7910291v.6

Cablevision released an advertisement of its own. In Cablevision's advertisement, a voice-over reads the following on-screen text: "Verizon claims they're all fiber optic. True or false? The answer is false." The advertisement continues: "Verizon still actually uses regular cable in the home."

20. The claim in Cablevision's advertisement is entirely true: Verizon does in fact claim through myriad advertisements, including television, radio, and print ads disseminated within the past month, to be "all fiber optic." Verizon's claim is, in fact, false. And at least one of the reasons why Verizon's "all fiber optic" claim is false is that Verizon in fact uses regular cable in the home to deliver its service.

21. Verizon seeks to prevent Cablevision from communicating Cablevision's truthful message about Verizon's false claims in the marketplace.

22. On or about April 10, 2015, Verizon sent a cease and desist letter to Cablevision asserting that Cablevision's television commercial "must be immediately stopped" and asserted that commercial was false advertising "under Section 1125(a) of the Lanham Act and other federal and state laws."

23. On or about April 27, 2015, Verizon Communications, Inc. filed a challenge to Cablevision's advertisement with the National Advertising Division of the Council of Better Business Bureaus ("NAD"). Founded in 1971, NAD is an industry self-regulatory body whose "mission is to review national advertising for truthfulness and accuracy and foster public confidence in the credibility of advertising." *See* NAD website at www.nadreview.org.

24. NAD rules allow for no discovery, no evidentiary hearing, and no confrontation or cross-examination of opposing witnesses. Rather, after written submissions from the parties, NAD may, in its discretion, request additional information and/or meet with the

parties on an ex parte basis, and then must render a decision. Participation in NAD proceedings is voluntary; however, once an advertiser agrees to subject its claims to NAD review, there is a strong incentive for the advertiser to adhere to NAD's ruling. Failure to comply results in a referral to "the appropriate government agency" – typically the Federal Trade Commission.

25. In the NAD proceeding, Verizon Communications, Inc. claims that Cablevision's advertisement is false, and requests that NAD direct Cablevision to cease making its advertising claim.

26. Cablevision has decided not to voluntarily submit to NAD review of the advertisement.

27. Based upon the totality of circumstances, including Verizon Communications, Inc.'s instituting the NAD proceeding, Verizon's demand that Cablevision terminate that subject advertisement, and Verizon's assertion that the subject advertisement constitutes false advertising under federal law, there exists a substantial, real, and immediate controversy between Cablevision and Verizon, who have adverse legal interests, concerning the truth of Cablevision's advertising under Section 43(a) of the Lanham Act.

### FIRST CAUSE OF ACTION
### Declaratory Judgment

28. Cablevision repeats and realleges the allegations of paragraphs 1 through 26 as if fully set forth herein.

29. An actual controversy has arisen and now exists between Cablevision, on the one hand, and Verizon, on the other hand, with respect to the truth of Cablevision's advertisement, as set forth above. Cablevision is informed and believes and on such information and belief alleges that Verizon contends that Cablevision's advertisement is false and thereby

7910291v.6

violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Cablevision contends that this advertising not false and does not violate the Lanham Act.

WHEREFORE, Cablevision prays for relief as follows:

(1) For a declaration that Cablevision's advertisement – including the statements "Verizon claims they're all fiber optic. True or false? The answer is false" and "Verizon still actually uses regular cable in the home" – does not constitute false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or any related state false advertising law;

(2) For a declaration that this case is "exceptional" under 15 U.S.C. § 1117 and an award of attorneys' fees and costs; and

(3) For an award of such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues triable to a jury.

Dated:  May 19, 2015

Respectfully submitted,

By: _____
Saul B. Shapiro
Travis J. Tu
Catherine A. Williams
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 336-2000
Facsimile:  (212) 336-2222

*Attorneys for Plaintiffs Cablevision Systems Corp. and CSC Holdings, LLC*

7910291v.6

# EXHIBIT 1

# TRUE OR FALSE NO. 3
(fiber optic)

  

**VO:** Let's play True or False with Verizon FiOS.　　**VO:** Verizon claims they are all fiber optic. Is this true or false?　　**VO:** The answer is False





**VO:** Sorry! Actually, Verizon still uses regular cable in the home. Better luck next time!